# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 07-60569-CIV-ROSENBAUM
## (CONSENT CASE)

CHESTER BOZEMAN,
KENNETH FERGUSON, and
BYRAN L. WOODS,

          Plaintiffs,

v.

PORT-O-TECH CORP., a Florida
corporation, WILLIAM PEELER, and
MANUEL ALONSO, individually,

          Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause is before the Court upon the bench trial held on August 4, 5, 6, and 11, 2008.  The parties consented to trial before a United States Magistrate Judge, *see* D.E. 14-2, and the Honorable William P. Dimitrouleas referred the matter to the undersigned in accordance with 28 U.S.C. §636(b).  [D.E. 15].

The parties filed certain stipulations for the Court's consideration at trial.  [D.E. 45, 65]. Additionally, Plaintiffs filed their Proposed Findings of Fact and Conclusions of Law [D.E. 51] on July 30, 2008, and Defendants filed their Revised Proposed Findings of Fact and Conclusions of Law [D.E. 58] on August 4, 2008.  The Court has also reviewed the deposition transcript of Betsy Pier, Rule 30(b)(6), Fed. R. Civ. P., corporate representative of Gevity HR, Inc.  [D.E. 52], all exhibits entered into evidence at trial, Plaintiffs' Supplemental Post-Trial Brief filed on August 20, 2008

[D.E. 67], and Defendants' Reply to Plaintiffs' Supplemental Post-Trial Brief, filed on August 29, 2008.  [D.E. 68].

## *I.  INTRODUCTION*

This action arises under the Fair Labor Standards Act, *as amended,* 29 U.S.C. §§201, *et seq.* ("FLSA"), the federal law that provides for the payment of minimum wages and overtime pay. Plaintiffs, who were hired by Defendants to deliver and maintain portable toilets in Broward and Palm Beach Counties, contend that Defendants did not pay Plaintiffs all of Plaintiffs' overtime pay for all hours they allegedly worked in excess of forty per week.  Specifically, Plaintiffs contend that they were paid straight time for all overtime hours worked, rather than time and one-half, as required by the FLSA.

In particular, Plaintiffs Chester Bozeman and Kenneth Ferguson seek additional half-time for overtime hours they claim to have worked from April 12, 2004, through January 14, 2007. Similarly, Plaintiff Byran Woods requests additional half-time for overtime hours he alleges he worked between November 7, 2005, and January 14, 2007.  All Plaintiffs also seek liquidated damages and attorneys' fees and costs.

In response, Defendants assert that they paid Plaintiffs Bozeman and Ferguson time and one-half for all overtime that they actually worked, but Defendants dispute that Plaintiffs Bozeman and Ferguson worked all of the overtime that they seek.  As for Plaintiff Woods, Defendants concede that they paid him no overtime compensation but contend that he performed no overtime work.

The Court has considered the testimony and other evidence presented by the parties at the bench trial held in this case and is duly advised in the premises.  Accordingly, pursuant to the requirements of Rule 52 of the Federal Rules of Civil Procedure, the Court issues the following

Findings of Fact and Conclusions of Law.

## *II.  FINDINGS OF FACT*[1]

### A.  Parties and Jurisdiction

1.  The jurisdiction of the Court over this controversy is based on 29 U.S.C. §216(b) and 28 U.S.C. §1331.

2.  At all times material to the case, Plaintiff Chester Bozeman was a resident of Pompano Beach, Broward County, Florida.  Plaintiff Bozeman is sixty-one years old and has a tenth-grade education.  He has been pumping toilets for more than thirty years.  D.E. 45, Bozeman Testimony.

3.  At all times material to the case, Plaintiff Kenneth Ferguson was a resident of Fort Lauderdale, Broward County, Florida.  Plaintiff Ferguson is sixty-eight years old and has a high school education.  He has been pumping toilets for more than thirty years.  D.E. 45, Ferguson Testimony.

4.  At all times material to the case, Plaintiff Byran Woods was a resident of Fort Lauderdale, Broward County, Florida.  D.E. 45.

5.  At all times material to the case, Plaintiffs were "employees" within the meaning of the FLSA.  D.E. 45.

6.  At all times material to the case, Defendant Port-O-Tech was a corporation organized under the laws of the state of Florida.  D.E. 45.

7.  At all times material to the case, Defendant Port-O-Tech was engaged in business at 225 N.W. 9th Terrace, Homestead, Miami-Dade County, Florida 33030.  D.E. 45.

---

[1]To the extent that any of the following factual findings may represent conclusions of law, the Court adopts them as such.

8.  At all times material to the case, Defendant Port-O-Tech was an employer authorized to do business and doing business in Florida, with a place of business in Homestead, Miami-Dade County, Florida, and at all times relevant was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d).  D.E. 45.

9.  At all times material to the case, Defendant Port-O-Tech regularly owned and operated a business engaged in commerce or in the production of goods for commerce as defined in Sections 3(r) and 3(s) of the FLSA, 29 U.S.C. §§203(r) and 203(s).  D.E. 45.

10.  Defendant William Peeler was an employer of Plaintiffs and others similarly situated within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d) in that Peeler was an officer of Port-O-Tech and acted directly in the interests of Defendant Port-O-Tech in relation to the employees of Defendant Port-O-Tech, including Plaintiffs and others similarly situated.  D.E. 45.

11.  Defendant Manuel Alonso was an employer of Plaintiffs and others similarly situated within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d) in that Alonso was an officer of Port-O-Tech and acted directly in the interests of Defendant Port-O-Tech in relation to the employees of Defendant Port-O-Tech, including Plaintiffs and others similarly situated.  D.E. 45.

12.  On September 23, 2002, Defendant Port-O-Tech hired Plaintiff Bozeman to deliver and maintain portable toilets.  His employment ended on or about January 28, 2007.  D.E. 45.

13.  On January 15, 2003, Defendant Port-O-Tech hired Plaintiff Ferguson to deliver and maintain portable toilets.  His employment ended on or about March 11, 2007.  D.E. 45.

14.  On November 9, 2005, Defendant Port-O-Tech hired Plaintiff Woods to deliver and maintain portable toilets.  His employment ended on or about January 14, 2007.  D.E. 45.

15.  Plaintiffs Bozeman, Ferguson, and Woods delivered and maintained portable toilets

throughout Broward and Palm Beach Counties.  D.E. 45.

16.  At all times material to this case, Plaintiff Ferguson's job duties consisted of manual labor only.  Management was not his primary duty.  Plaintiff Ferguson never supervised two or more full-time employees having a combined subordinate hourly total of eighty or more.  D.E. 45.

17.  At all times material to this case, Plaintiff Bozeman's job duties consisted of manual labor only.  Management was not his primary duty.  Plaintiff Bozeman never supervised two or more full-time employees having a combined subordinate hourly total of eighty or more.  D.E. 45.

18.  At all times material to this case, Plaintiff Woods's job duties consisted of manual labor only.  Management was not his primary duty.  Plaintiff Woods never supervised two or more full-time employees having a combined subordinate hourly total of eighty or more.  D.E. 45.

19.  At all times for which Plaintiffs seek overtime pay, they worked out of Defendants' Broward County location under the supervision of Michael Olin, who hired them on behalf of Port-O-Tech.[2]

20.  Before joining Port-O-Tech, Plaintiffs Bozeman and Ferguson had worked with and under the supervision of Olin for approximately thirty years at other portable toilet businesses, some of which Olin owned.

21.  Plaintiff Ferguson is entitled to be paid at the rate of time and one-half for any hours he worked in excess of forty hours per week.  D.E. 45.

22.  Plaintiff Bozeman is entitled to be paid at the rate of time and one-half for any hours he worked in excess of forty hours per week.

─────────────

[2]In January, 2007, Sean Steibel replaced Olin as the manager of the Broward office. Plaintiffs do not seek unpaid overtime compensation from that time forward, as Port-O-Tech paid Plaintiffs time and one-half for all overtime work performed after Steibel became the manager.

23.  Plaintiff Woods is entitled to be paid at the rate of time and one-half for any hours he worked in excess of forty hours per week.  D.E. 45.

24.  Pursuant to 29 U.S.C. §216, Plaintiffs are provided with a statutory right to bring this action on behalf of themselves and other employees similarly situated.  *See also* D.E. 45.

## B.  Plaintiffs' Rates of Pay

25.  While employed by Defendants, Plaintiffs Bozeman and Ferguson kept track of the hours they worked by preparing handwritten sheets at the end of every two-week period, indicating the start and finish times for each day worked during the time period.  These time sheets represented the most accurate accounting of hours actually worked by Plaintiffs Bozeman and Ferguson.

27.  Plaintiffs Bozeman and Ferguson turned their time sheets in to Olin.  Olin then rewrote Plaintiffs' time sheets and communicated Plaintiffs Bozeman's and Ferguson's hours to Defendant Port-O-Tech's Homestead office for payroll to be prepared.

27.  The FLSA requires Defendants to prepare and maintain accurate time sheets reflecting the number of hours actually worked by Plaintiffs.  *See* 29 U.S.C. §211(c).

28.  Defendants have not maintained accurate time sheets indicating the number of hours actually worked by Plaintiff Woods.

29.  With the exception of Defense Exhibit ("DX") 6A, which consists of two of Plaintiff Bozeman's handwritten time sheets, and DX 5, which is one page of Plaintiff Ferguson's handwritten notes regarding his hours worked on three days, Defendants have not maintained the time sheets handwritten by Plaintiffs Bozeman and Ferguson nor the time sheets written by Olin. Similarly, Defendants have not prepared and maintained any other time sheets showing the hours actually worked by Plaintiffs.

A.     Olin ran the Broward and Palm Beach County operations of Port-O-Tech with little or no supervision from his supervisors, Defendants Manuel Alonso or William Peeler.

B.     Defendant Manuel Alonso testified that he believed that Olin was preparing and maintaining accurate time records for Plaintiffs Bozeman and Ferguson.

C.     When Olin announced to Defendant Alonso that he would be leaving the employment of Port-O-Tech, Defendant Alonso made a visit to the Broward office of Port-O-Tech, from which Olin had been working.

D.     During his visit to the Broward office of Port-O-Tech, Defendant Alonso collected all of the papers and materials he found in the office and placed them in a box that he took to Homestead.

E.     Once this case began, Defendant Alonso reviewed the materials in the box and found the two pages of Plaintiff Bozeman's handwritten time sheets that comprise Defense Exhibit 6A, as well as Olin's re-writings of Plaintiff Bozeman's two handwritten time sheets, identified in this record as DXs 6B and 6C.  He also found DX 5, a portion of one page of Plaintiff Ferguson's handwritten time sheet.

F.     Other than DXs 6A, 6B, and 6C, Defendants have been unable to find Plaintiffs Bozeman and Ferguson's handwritten time records.

G.     Olin threw out the handwritten time sheets after he communicated Plaintiffs Bozeman's and Ferguson's hours worked to the Homestead office of Defendant Port-O-Tech.

30.  Defendant Port-O-Tech paid its employees for two-week pay periods.

31.  Defendant Port-O-Tech engaged Gevity, Inc., to prepare Defendant Port-O-Tech's payroll and maintain its official payroll records.

32.  When Olin reported the hours worked by Plaintiffs Bozeman and Ferguson, Olin added in hours for days worked by Plaintiffs Ferguson and Bozeman when Plaintiffs Ferguson and Bozeman forgot to write their own hours for such days.

33.  Additionally, when Olin communicated to Defendant Port-O-Tech the hours worked by Plaintiffs Bozeman and Ferguson during each pay period, Olin added in hours not worked by Plaintiffs Bozeman and Ferguson to the total number of hours actually worked by Plaintiffs Bozeman and Ferguson.  Although the Court finds Olin, in general, to lack credibility as a witness, other credible evidence directs this conclusion.

      A.    Olin is not credible.

          1.    Olin has testified under oath on several occasions (including in his deposition, in a state court action by Port-O-Tech against Olin seeking injunctive relief enforcing a non-compete agreement, and before this Court both in a discovery hearing and during trial) in contradictory ways regarding material matters.

          2.    Olin has admitted short-term memory loss.

          3.    Olin has demonstrated to the Court what can be described most charitably as long-term memory problems.

          4.    Olin's demeanor during his testimony made it appear as though he was, on occasion, being less than truthful.

B.   Other credible evidence demonstrates that when Olin communicated to Defendant Port-O-Tech the hours worked by Plaintiffs Bozeman and Ferguson during each pay period, Olin added in hours not worked by Plaintiffs to Plaintiffs' total hours reported.

1.   Plaintiff Bozeman, whom the Court found to be credible on this matter, testified that the most overtime he ever worked during a pay period amounted to approximately thirty hours, yet Plaintiff's Exhibit ("PX") 1, the Gevity payroll records for Plaintiff Bozeman, regularly reflect that Plaintiff Bozeman received "bonuses" translating, as explained, *infra*, to payment for overtime hours well in excess of thirty hours per pay period.

2.   A review of DXs 6A, 6B, and 6C, in comparison with PX 1 also supports this conclusion.   DX 6A consists of two of Plaintiff Bozeman's handwritten time sheets reporting the hours he worked during the applicable pay period.   DXs 6B and 6C are Olin's re-written versions of Plaintiff Bozeman's handwritten time sheets comprising DX 6A.   Page one of DX 6 indicates that Plaintiff Bozeman documented having spent 99.5 hours working during the pay period from August 28, 2006, through September 10, 2006. Similarly, DX 6B, which is simply Olin's re-written version of Plaintiff Bozeman's reported hours for the same time period,

indicates that Bozeman worked 100[3] hours during the relevant time period, of which twenty hours Olin apparently viewed as overtime. Yet the official payroll records for Plaintiff Bozeman for that same time period reflect that Plaintiff Bozeman received payment for eighty hours of regular time, eight hours of holiday time, and a "bonus" of $540.00, translating to 45 hours of overtime, as explained, *infra* at ¶37, for a total of 125 hours of work (not including the eight hours of holiday time) – approximately twenty-five more than Bozeman himself reported having worked. *See* PX 1 at GEVITY-CB 0043. A comparison of DX 6 at 2 and DX 6B with PX 1 at GEVITY-CB 0047 similarly supports the conclusion that Olin reported for payroll purposes hours in addition to those actually worked by Plaintiff Bozeman.[4]

34. During the relevant time frame, Plaintiffs Bozeman and Ferguson were paid $12.00 per hour for regular time worked, or all hours up to eighty in a two-week pay period.

---

[3]The extra half hour appears to result from an addition error on the part of Olin. For September 8, 2006, Bozeman wrote that he worked the hours 4:30 to 3:30, which equals eleven hours. Olin, apparently inadvertently, added up these hours to equal 11 ½ hours.

[4]DX 6 at 2 includes dates at the end of the pay period for which Plaintiff Bozeman apparently neglected to document his hours (December 29 and 30, 2006). Olin filled in those hours for him and concluded in DX 6C that Bozeman had worked 106 1/4 hours during the pay period beginning on December 18, 2006, and ending on December 31, 2006. Defense Exhhibit 1 at GEVITY-CB 0047, however, indicates for that same pay period that Bozeman was paid for eighty hours of regular time, eight hours of holiday time, and $504.00 in "bonus," which, as explained, *infra* at ¶37, indicates payment for 42 hours of overtime, or 15 3/4 hours more than Olin indicated Bozeman had actually worked during the pay period.

35.   Plaintiffs Bozeman and Ferguson also received "bonuses" for all hours in excess of eighty reported by Olin to have been worked by Bozeman and Ferguson per pay period.

36.   Plaintiffs Bozeman and Ferguson, as well as Olin and Defendants, understood that the "bonuses" Plaintiffs Bozeman and Ferguson received as a part of their bi-weekly pay were overtime compensation.[5]   The "bonuses" were not for any other purpose, such as work performed well or anything else.   In this sense, they were not true "bonuses."

37.   The "bonus" was calculated each pay period by multiplying the number of hours in excess of eighty reported by Olin to have been worked, respectively, by Plaintiffs Bozeman and Ferguson, by each Plaintiff's hourly rate of $12.00.

> A.   Although Defendants suggested that the "bonus" payments represented the number of overtime hours Plaintiffs Bozeman and Ferguson worked, multiplied by $18.00 per hour, or time and one half, the Court finds no evidence to support this proposition.

---

[5]While Plaintiff Bozeman, as well as Olin, testified that some of the bonuses Plaintiff Bozeman received constituted pay from prior pay periods where Plaintiff Bozeman thought he had not been paid enough, Plaintiff Bozeman was paid for 80 hours of regular time per pay period for each of the pay periods at issue.   Consequently, even if some of the pay received as bonuses constituted pay from work done in earlier pay periods, it still must have been pay for overtime work.   The same is essentially true of Plaintiff Ferguson, beginning with the pay period starting January 3, 2005, when Plaintiff Ferguson began regularly working at least eighty hours per pay period.   Prior to that date, except for the pay period from April 12-25, 2004, Plaintiff Ferguson did not work any overtime hours at all.   Thus, to the extent that Plaintiff Ferguson was paid as part of any of his bonuses for hours worked in earlier pay periods, such payments for regular hours worked, if any even existed, must have been, at most, *de minimis*.   Furthermore, Defendant Alonso testified that when a dispute over pay arose, Defendant Port-O-Tech issued the disputed money in a second bonus.   Plaintiffs' Exhibits 1 and 2 appear to corroborate this testimony.   *See, e.g.,* PX 1 at GEVITY-CB 0046; PX 2 at 19 ("supple bonus"), 21, 26.   In the calculations performed, *infra*, second bonuses are not included in determining the amount of overtime compensation paid by Defendants.

B.       Defendant Manuel Alonso himself testified that he did not know how Michael Olin calculated the bonuses of Plaintiffs Bozeman and Ferguson.

C.       Dividing $18.00 into several of the bonus amounts reflected in the Gevity payroll records for Plaintiffs Bozeman and Ferguson (PX 1 and PX 2) yields numbers of hours worked that are not consistent with the 15-minute intervals reported by Plaintiffs and Olin in Plaintiffs' work hour records.  Rather, to be consistent with an $18.00-per-hour rate of pay, Plaintiffs and Olin would have had to have reported their hours in 20-minute intervals, which they generally did not do.

38.  Defendants paid Plaintiff Woods a daily rate of $75.00 for the first ninety days of his employment and a daily rate of $85.00 during his employment thereafter.

39.  Defendants did not pay Plaintiff Woods for any overtime hours.

40.  In addition to his daily rate for the number of days Plaintiff Woods actually worked, Plaintiff Woods also received, at times, holiday pay, and, on one occasion, a $200.00 bonus.  The $200.00 bonus was not overtime compensation.

## C.  Willfulness

41.  At all times material to this case, Defendants were aware that day rate or piece rate employees were entitled to be compensated for all overtime hours they worked in excess of forty per week.  D.E. 65.

42.  At all times material to this case, Defendants were aware that any overtime hours for day rate or piece rate employees were to be calculated at an additional time and one-half the effective hourly rate for the week.  D.E. 65.

43.  At all times material to this case, Defendants were aware that they were required to maintain time records for all non-exempt employees, including all drivers.  D.E. 65.

44.  At all times material to this case, Defendants were aware that it was unlawful under the FLSA not to pay an overtime premium for all hours worked in excess of forty for all non-exempt employees, including drivers who were paid either by the hour or by the day.  D.E. 65.

45.  At all times material to this case, Defendants were aware that it was unlawful under the FLSA not to pay hourly employees overtime at the rate of time and one-half their hourly rate.  D.E. 65.

46.  At all times material to this case, Defendants were aware the Plaintiffs Bozeman, Woods, and Ferguson were entitled to overtime compensation for all hours worked in excess of forty per week.  D.E. 65.

47.  Defendants were aware that Plaintiffs Bozeman and Ferguson worked in excess of forty hours per week.  Indeed, Defendant Alonso conceded during his testimony that some of the overtime claimed by Plaintiffs Bozeman and Ferguson was "legitimate."

48.  Defendant Port-O-Tech has been sued on two prior occasions in this District for failure to pay their employees overtime, in violation of the FLSA:

        A.    *Robert J. McAdams v. Port-O-Tech Corp.*, Case No. 05-21683-CV-LENARD (S.D. Fla. June 21, 2005); and

        B.    *Anthony Smith v. Port-O-Tech Corp.*, Case No. 06-21319-CV-UNGARO (S.D. Fla. May 16, 2006).

D.E. 45.

49.  Both the *McAdams* and *Smith* lawsuits were settled without admission of liability for

-13-

approximately $14,000 each.  D.E. 45; Alonso testimony.

50.  Defendant Alonso gave conflicting testimony regarding his knowledge of the fact that Defendants were not paying Plaintiffs time and one-half for hours worked in excess of forty per week, leading the Court to conclude that Defendant Alonso knew that Defendants were not paying Plaintiffs time and one-half for hours reported worked in excess of forty per week until January 15, 2007, when Port-O-Tech corrected the situation.

      A.      Defendant Alonso testified that for purposes of recording Plaintiffs' work time, he had provided Olin with time sheets like the ones entered into evidence as DX 16, and Defendant Alonso believed that Olin was preparing and maintaining these time sheets while employed by Port-O-Tech.

      B.      Yet Defendant Alonso testified that while Olin still worked at Port-O-Tech, Defendant Alonso saw filled-out handwritten time sheets for the Broward employees, which the evidence demonstrates were not time sheets like those in DX 16, but, rather, were of the type appearing in DXs 6A, 6B, and 6C.

      C.      Additionally, Defendant Alonso testified that he received the payroll every two weeks, and if he had a problem with it, he figured it out himself.[6]  In this regard, Defendant Alonso stated that he divided the dollar amounts for the bonuses by $18.00 for Plaintiffs Bozeman and Ferguson to determine how many hours of overtime they had worked.

      D.      Defendant Alonso then testified that Olin communicated dollar amounts for

---

[6]Homestead office manager Dora Aviles, who prepared the payroll for Gevity, also testified that Defendant Alonso reviewed the payroll every week before it was submitted to Gevity for the issuance of checks.

Plaintiffs' work hours to Homestead, and Defendant Alonso did not know how Olin arrived at those dollar amounts.

E.  Defendant Alonso also testified that he did not know how the bonuses for Plaintiffs Bozeman and Ferguson were calculated.

F.  Defendant Alonso testified that he first discovered that overtime appeared on the payroll records under the description "bonus" when Olin stated he was leaving Port-O-Tech in January, 2007.

51.  Defendants did not pay any drivers time and one-half for hours worked in excess of forty per week until February 16, 2006, and then, Defendants paid only Miami drivers time and one-half.

A.  Dora Aviles, who worked at the Homestead office from April, 2004,[7] through February 27, 2006, and became the office manager in approximately January, 2005, prepared the payroll to be sent to Gevity for processing.

B.  Aviles testified that Port-O-Tech began paying its office workers overtime compensation some time after Aviles began her employment with Port-O-Tech, following a Gevity Human Resources representative's direction to Port-O-Tech that it must pay its employees overtime.

C.  Despite Port-O-Tech's payment of overtime compensation to its office workers some time after Aviles began her employment with Port-O-Tech, Aviles testified that Port-O-Tech never paid drivers overtime while Aviles

---

[7]Aviles expressed confusion regarding whether she had begun working for Port-O-Tech in 2003 or 2004. Certain other aspects of Aviles's testimony were also troubling from the standpoint of credibility. The Court, however, relies on the portions of Aviles's testimony cited above because they were corroborated by other evidence, as noted.

worked there.

D.     DX 15 appears, more or less, to corroborate Aviles's testimony in this regard. DX 15 consists of a compilation of payroll records of other Port-O-Tech employees.  These records, which Defendants selected and presented, pertain to two drivers, and the rest relate to office workers.  With respect to the office workers' records, the earliest entry showing overtime compensation at time and one-half occurs for the pay period from August 29, 2005, through September 11, 2005.  For the drivers, the earliest pay period reflecting payment of overtime compensation at time and one-half occurs in the entry for the pay period from January 30, 2006, through February 12, 2006, very near the end of Aviles's employment with Port-O-Tech, and these entries appear only on the payroll records of two Miami drivers, who Defendant Alonso testified were compensated differently from Broward/Palm Beach drivers.

52.  From at least April 12, 2004, through January 14, 2007, Defendants failed to pay any of the Plaintiffs time and one-half for any hours over forty worked in a week, knowing that the FLSA required them to do so and knowing that Plaintiffs had worked in excess of forty hours in a week.

**D.  Overtime Hours Worked By Plaintiffs**

53.  Olin owned a portable toilet company called Coylin Industries ("Coylin"), which competed against Port-O-Tech, and for which Olin worked for part of the time he was employed by

Port-O-Tech.[8]

54.   Defendants were not aware that Olin operated Coylin while Defendants employed him.

55.   In fact, Olin entered into a non-compete agreement with Defendant Port-O-Tech, which precluded Olin from working at a competing portable toilet business while employed by Port-O-Tech and for a time period thereafter.

56.   At the time Olin was operating Coylin while employed by Defendant Port-O-Tech, Coylin had no equipment and no drivers.

57.   At the time Olin was operating Coylin Industries while employed by Defendant Port-O-Tech, Olin used Defendants' equipment and Plaintiffs Bozeman, Ferguson, and Woods, among others, to operate Coylin.  Plaintiffs performed the same work for Coylin that they engaged in for Defendants.

58.   For some portion of the hours Plaintiffs Bozeman, Ferguson, and Woods reported they had worked for Defendant Port-O-Tech, they were actually working for Coylin.

59.   Although Plaintiffs worked for Coylin while employed by and on the clock for Defendants, Plaintiffs did not know that they were working for Coylin when they were so engaged and on the clock for Defendants, or, to the extent that they did know, Defendants have failed to provide any evidence attempting to quantify the number of hours Plaintiffs allegedly worked for Coylin while on the clock for Defendants.  In view of the evidence and testimony regarding

─────────────

[8]Olin also owned a portable toilet company called Royal Flush, which competed against Port-O-Tech, and for which Olin worked during the end of the time he was employed by Port-O-Tech.  No credible evidence indicates that Plaintiffs performed any work for Royal Flush while on the clock for Port-O-Tech.  Indeed, to the contrary, Plaintiff Ferguson was fired from Port-O-Tech after Defendant Alonso observed him driving a Royal Flush truck while he was not on duty for Port-O-Tech.

Plaintiffs' work for Port-O-Tech, it appears to the Court that any hours Plaintiffs allegedly worked for Coylin while on the clock for Defendants would have been *de minimis*.

A.   Plaintiffs testified that they were not aware that they were performing work for Coylin when they were doing so.  The Court finds Plaintiffs Bozeman and Woods to be credible with respect to material aspects of their testimony, including their estimations regarding the number of hours worked, among others, and finds no credible evidence contradicting them regarding their lack of knowledge that they were working for Coylin at the times that they performed such services.

B.   Indeed, Plaintiffs serviced Coylin customers while driving Port-O-Tech trucks and among their stops for Defendants' patrons, as directed by Olin, their Port-O-Tech supervisor.  All equipment that Plaintiffs serviced, which was not owned by the customers, bore the name Port-O-Tech on it, and Coylin customers such as Starlight Hotel mailed payment to Coylin, so Plaintiffs never saw the checks made out to Coylin.

C.   As for Plaintiff Ferguson, while, for the reasons indicated, *infra*, the Court questions the reasonableness of some of the hours Plaintiff Ferguson claims to have worked for Defendants, it makes no sense that Plaintiff Ferguson would have been aware that he was working for Coylin while on the clock for Defendants when Plaintiffs Bozeman and Woods were not.

D.   Defendants presented the testimony of Olin to demonstrate that Plaintiffs were aware that they were actually working for Coylin while on the clock for

-18-

Port-O-Tech.  As noted above, the Court does not find Olin credible.

E.     In further support of their position, Defendants directed the Court to PX 9, which consists of two checks to Defendant Ferguson ($200.00 and $400.00) and three checks to Defendant Bozeman ($85.00, $50.00, and $90.00), all drawn on the bank account of Coylin, which Olin testified were in payment for work Plaintiffs Bozeman and Ferguson did for Coylin.  No checks relating to Defendant Woods were presented.  Plaintiffs Bozeman and Ferguson testified that these checks were loans from Olin for personal matters, such as paying the rent or electrical bills.[9]  Although Olin testified that these checks

---

[9]Additionally, Defendants attempted to rely upon DX 8, an eleven-page document purporting to be the Coylin Industries general ledger for an unknown period of time, which shows only eight entries apparently pertaining to Plaintiff Ferguson and six entries relating to Plaintiff Bozeman, out of approximately 400 entries.  The Court reserved ruling on admission of this document at trial, as Defendants produced a copy of it to Plaintiffs for the first time on June 30, 2008 (except for the first page, which was produced in May, 2008), after the close of discovery, and Defendants did not provide the original version of the document to Plaintiffs for their review until during the trial.  As the copy is somewhat illegible due to the fact that the original is handwritten, Defendants' failure to provide access to the original until the middle of trial does cause some prejudice to Plaintiffs' ability to prepare for trial with respect to this document.  More significant to the Court, however, the pages in DX 8 do not appear to be capable of being put into any discernable chronological order.  For example, it appears from the dates (only months and days, not years) and check numbers identified on the document, that the order of the first seven pages should be 1, 2, 3, 4, 7, 6, 5.  As for the proper placement of pages 8 through 11, which appear to be in chronological order amongst themselves, with respect to pages 1 through 7, the Court is at a loss.  Indeed, while it appears from the dates on pages 8 through 11 that they may cover some of the same period as page 2, the check numbers precede the check numbers appearing on page 1 of the exhibit.  Moreover, the purported ledger identifies no years.  Additionally, the only person theoretically capable of testifying to the ledger was Olin, whose credibility is sorely lacking, and who effectively testified, himself, as to the unreliability of the ledger, as it allegedly did not contain cash transactions.  In short, even if the Court were inclined to admit DX 8, which, under the circumstances, it is not, the Court would be hard-pressed to rely upon DX 8 as any kind of reliable, or even coherent, evidence that Plaintiffs Bozeman and Ferguson either knew that they were working for Coylin Industries when they charged their hours to Defendants or that Plaintiffs Bozeman and Ferguson actually worked a certain number of

-19-

were payment for work performed by Plaintiffs Bozeman and Ferguson for Coylin, for the reasons previously stated, the Court does not find Olin to be a credible witness and declines to rely on his testimony in the absence of corroborating, credible evidence.  Thus, the Court accepts the explanations of Plaintiffs Bozeman and Ferguson for the specific checks at issue and finds that they do not provide evidence that Plaintiffs Bozeman and Ferguson knew that they were working for Coylin during a portion of the time they were on the clock for Defendants.

F.   Defendants also relied upon DXs 1 and 2 to demonstrate that Plaintiffs Bozeman and Ferguson must have known that they were performing some work for Coylin while on the clock for Defendants.  DX 1 is a composite exhibit of Plaintiff Ferguson's route sheets from November, 2003, through January 7, 2006.  DX 2 is a composite exhibit of Plaintiff Bozeman's route sheets from July, 2004, through December 7, 2007.  Missing from these route sheets is any reference to stops at places such as the Starlight Hotel, which Eva Renteria testified Plaintiffs Bozeman and Ferguson serviced for Coylin Industries.  Thus, Defendants argue, Plaintiffs must have known that such stops were not official Port-O-Tech stops.  The problem with Defendants' argument rests in the fact that while such customers' names might not have appeared on the route sheets, Plaintiffs, Olin, and Alonso testified that it was not unusual for Olin, as Plaintiffs' supervisor, to call Plaintiffs and

_____

hours for Coylin Industries, while on the clock for Defendants.

-20-

telephonically add stops to Plaintiffs' routes while Plaintiffs were out on their routes.  As such direction came from Plaintiffs' supervisor at Port-O-Tech, in the absence of information to the contrary, Plaintiffs would not have had reason to know that they were performing work for Coylin Industries, particularly in view of the fact that they were driving Port-O-Tech trucks, using Port-O-Tech equipment, and servicing Port-O-Tech toilets and tanks.

60.  Defendants are responsible for paying Plaintiffs for hours Plaintiffs worked for Coylin at Olin's direction when Plaintiffs believed they were working for Defendants.  Defendants placed Olin in a position of management and allowed him to direct Plaintiffs' activities on behalf of Defendants without significant oversight.  In this regard, Defendant Alonso testified that he did not spend much time in the Broward office when Olin served as the Broward manager for Port-O-Tech. Additionally, he never reviewed Plaintiffs' handwritten time sheets and compared them to the payroll.

61.  To the extent that Defendants assert that Plaintiffs knowingly charged hours worked for Coylin to Defendants, Defendants have failed to present evidence quantifying such hours, despite inquiry from the Court.  Based on the evidence presented at trial, the Court has no means to quantify such hours allegedly worked by Plaintiffs for Coylin while on the clock for Defendants, even if the Court were satisfied that Plaintiffs knew of this scheme.  Moreover, the scant references to Plaintiffs Bozeman and Ferguson and the lack of reference to Plaintiff Woods in DX 8, even if it were admissible, suggest that any work performed by Plaintiffs for Coylin while Plaintiffs charged such hours to Defendants were *de minimis*.

62.  The reasonable inference to be drawn from evidence put forth by Plaintiffs Bozeman and

Ferguson and rebutted by Defendants is that the most overtime Plaintiffs Bozeman and Ferguson worked in a pay period amounted to approximately thirty hours.

      A.      Although Plaintiff Ferguson claimed during trial to have worked overtime hours each pay period equaling the bonus payment for that pay period, divided by $12.00 per hour, he admitted testifying in his deposition that he usually worked ten hours per day on Mondays, Tuesdays, Thursdays, and Fridays, and six to seven hours on Wednesdays and Saturdays, amounting to an average of 52-54 hours per week, or 26-28 hours of overtime per 2-week pay period. The Court did not find Plaintiff Ferguson's testimony during trial to be credible regarding the number of hours of overtime he worked, and instead concludes that Plaintiff Ferguson's estimate of his overtime hours stated during his deposition provided a more accurate result.

            1.      Although the Court has taken into account special events such as the Wellington horse shows, when Plaintiffs performed their duties emptying portable toilet tanks, the trucks Plaintiffs used to perform their duties released a pungent odor that businesses found to be offensive and repugnant to their customers. Consequently, Plaintiffs had to perform the bulk of their duties outside normal business hours.

            2.      The dump where Plaintiffs emptied their trucks was only open for limited hours.

            3.      Plaintiff Ferguson also admitted to serving as a baseball umpire in the minor leagues during the spring, eating into the amount of time he

-22-

had available to perform overtime for Defendants.

4.    Plaintiff Bozeman, who performed the same duties as Plaintiff Ferguson, seemed truly shocked on the stand when asked whether he ever performed eighty hours of overtime in a pay period and instead explained that the most he could get was about thirty hours.  The Court found Plaintiff Bozeman's demeanor during this aspect of his testimony to be entirely credible.

5.    The Court found Plaintiff Ferguson's demeanor during his testimony regarding the number of hours of overtime he worked not to be consistent with truthfulness.

6.    Defendant Alonso and Olin conceded that Plaintiffs Ferguson and Bozeman worked "legitimate" overtime for Port-O-Tech.

63.  As for the reasonable inference to be drawn from the evidence presented by Plaintiff Woods and rebutted by Defendants, the Court finds that for any of the weeks where Plaintiff Woods worked seven days, he worked overtime of about three hours per pay period.

A.    Plaintiff Woods testified that he did not really keep track of his hours because he was paid a daily rate.

B.    In reconstructing his hours, Plaintiff Woods testified that he generally worked 39, 40, or 42 hours per week.  At times, Plaintiff Woods stated, he worked more than forty hours per week.

C.    According to Plaintiff Woods, he worked far more hours on Mondays, Tuesdays, Thursdays, and Fridays than he did on Wednesdays or Saturdays.

-23-

Because Plaintiff Woods is the one who asked to be paid a daily rate, it makes sense that he never would have worked more than eight hours in a single day, and, most likely, would have rarely, if ever, worked eight hours. Otherwise, it would have made more sense to be paid an hourly rate. Additionally, the Court heard extensive testimony regarding what Plaintiff Woods did on the various days of the week.  Thus,  the Court determines that the evidence supports a finding that Plaintiff Woods worked approximately seven hours per day on long days and four to five hours per day on short days.

D.      Plaintiff's Exhibit 3, the Gevity payroll records for Plaintiff Woods, demonstrate that Plaintiff Woods worked seven days a week for thirty-eight of the weeks at issue.

E.      Thus, in the weeks where Plaintiff Woods worked seven days per week, the Court finds that the reasonable inference to be drawn from all of the evidence is that Plaintiff Woods worked 41.5 hours in such weeks, or one-and-one-half hours of overtime ((4 x 7 hours) + (3 x 4.5 hours) = 41.5 hours).

64.  Plaintiff Woods's rate of overtime pay was $14.0625 per hour for the first ninety days of his employment, while Plaintiff Woods was paid a daily rate of $75.00 (($75.00/8) x 1.5), and $15.9375 per hour once his pay rate changed to $85.00 daily (($85.00/8) x 1.5).

**E.  Calculation of Any Overtime and Damages Owed by Defendants to Plaintiffs**

65.  Defendants owe Plaintiff Bozeman $1,409.88 in overtime compensation, plus an equal amount of liquidated damages, for a total of $2,819.76.

A.      The Court first converted all "bonus" entries for Plaintiff Bozeman in the

-24-

Gevity payroll records to hours of overtime by dividing each dollar amount by $12.00 per hour.

B.    Next, where the number of hours of overtime determined on Plaintiff Bozeman's Gevity payroll records exceeded thirty per pay period, the Court reduced the number of overtime hours for each such pay period to 30 hours.

C.    The Court then added up all overtime hours for each pay period and arrived at a total of 2,007.66 hours of overtime worked during the relevant time frame.

D.    The Court multiplied that number by $18.00 per hour, or time and one-half, and arrived at a total of $36,137.88 that Defendants should have paid to Plaintiff Bozeman in overtime.

E.    Separately, the Court totaled the amount of overtime Defendants actually paid to Plaintiff Bozeman and found such pay to amount to $34,728.00.

F.    Subtracting the amount paid from the amount owed, the Court arrived at a figure of $1,409.88 in overtime pay owed by Defendants to Plaintiff Bozeman.

66.  Defendants owe Plaintiff Ferguson $1,652.00 in overtime compensation, plus an equal amount of liquidated damages, for a total of $3,304.00.

A.    The Court first converted all "bonus" entries for Plaintiff Ferguson in the Gevity payroll records to hours of overtime by dividing each dollar amount by $12.00 per hour.

B.    Next, where the number of hours of overtime determined on Plaintiff

-25-

Ferguson's Gevity payroll records exceeded thirty per pay period, the Court reduced the number of overtime hours for each such pay period to 30 hours.

C.       The Court then added up all overtime hours for each pay period and arrived at a total of 1,247.5 hours of overtime worked during the relevant time frame.

D.       The Court multiplied that number by $18.00 per hour, or time and one-half, and arrived at a total of $22,455.00 that Defendants should have paid to Plaintiff Ferguson in overtime.

E.       Separately, the Court totaled the amount of overtime Defendants actually paid to Plaintiff Ferguson and found such pay to amount to $20,803.00.

F.       Subtracting the amount paid from the amount owed, the Court arrived at a figure of $1,652.00 in overtime pay owed by Defendants to Plaintiff Ferguson.

66.   Defendants owe Plaintiff Woods $885.94 in overtime compensation, plus an equal amount of liquidated damages, for a total of $1,771.88.

A.       Based on the Gevity payroll records, the Court determined that Plaintiff Woods worked seven days per week for Defendants for thirty-eight of the sixty-two weeks during the relevant time period.

B.       Eight of these weeks occurred at a time when Plaintiff Woods's correct overtime compensation rate was $14.0625.

C.       The Court multiplied these eight weeks by 1.5 hours of overtime, arriving at a figure of 12 hours of overtime.

D.       The Court then multiplied the 12 hours of overtime by the $14.0625 hourly

overtime rate, arriving at a figure of $168.75.

E.      Thirty of these weeks occurred at a time when Plaintiff Woods's correct overtime compensation rate was $15.9375.

F.      The Court multiplied each of these thirty weeks by 1.5 hours of overtime, arriving at a figure of forty-five hours of overtime.

G.      Next, the Court multiplied the thirty hours of overtime by $15.9375 per hour, arriving at a figure of $717.19.

H.      Finally, the Court added the $168.75 and the $717.19, to arrive at a figure of $885.94 in overtime pay owed by Defendants to Plaintiff Woods.

### III.  CONCLUSIONS OF LAW[10]

### A.  Parties and Jurisdiction

In this action for overtime compensation, the Court has jurisdiction over the subject matter and the parties pursuant to the FLSA.  The parties do not dispute that venue properly lies in the Southern District of Florida.

Congress originally enacted the FLSA in 1938 to correct and eliminate in the existence of interstate and international commerce "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §202.  In the instant case, Plaintiffs allege violations of the overtime compensation provisions of the FLSA, 29 U.S.C. §207.  Among other functions, Section 207 requires employers whose employees are not specifically exempted and are "engaged in commerce or in the production

---

[10]To the extent that any Conclusions of Law constitute Findings of Fact, they are adopted as such.

of goods for commerce, or [are] employed in an enterprise engaged in commerce" to compensate such employees at a rate of at least one and one-half times the employees' regular rate. 29 U.S.C. §207(a). Here, the parties agree and the evidence shows that Plaintiffs Bozeman, Ferguson, and Woods were employed by Defendant Port-O-Tech and were protected by the overtime compensation provisions of the FLSA. Consequently, to the extent that any of the Plaintiffs worked for Port-O-Tech for more than forty hours in a single week during the period of time in question, the FLSA required Defendants to pay Plaintiffs compensation at a rate of time and one-half their effective regular hourly rates of pay.

Defendants include Port-O-Tech Corp., William Peeler, and Manuel Alonso. Under the FLSA, all constitute proper defendants in this case. The FLSA defines an "employer," in relevant part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. §203(d). "The law is clear in the Eleventh Circuit that 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). In this case, the parties have stipulated that all three Defendants satisfy the definition of an "employer" under the FLSA. Consequently, all three Defendants are jointly and severally liable for damages to Plaintiffs caused by any violations of the FLSA.

## B. Overtime Hours Worked by Plaintiffs

An employee bringing suit for overtime wages under the FLSA bears the burden of proving that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as stated in*

*Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). Generally, an employee can satisfy this requirement by relying upon the employer's records of the employee's work hours and wages. *Id.* at 687. In this regard, Title 29, United States Code, Section 211(c) requires all employers subject to the FLSA to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ," as are required by the Administrator of the Wage and Hour Division of the Department of Labor. Among other records required to be maintained, on its face, Section 211(c) demands that an employer create and preserve records of the hours worked by its employees and the wages paid to those employees. Nor does delegating this function to employees excuse an employer from any neglect or failure to create and maintain the required records. *Wirtz v. Mississippi Publisher's Corp.*, 364 F.2d 603, 607 (5th Cir. 1966).[11]

Where the employer fails to maintain such records of Plaintiffs' work hours, an employee discharges his burden of demonstrating overtime hours worked

> if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88. Because in this case, Port-O-Tech did not preserve its records of the actual hours worked by Plaintiffs, Plaintiffs needed only to provide sufficient evidence of the approximate

---

[11]Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

-29-

overtime hours they worked.

An employee may fulfill his duty to present the necessary evidence under the *Mt. Clemens* formulation through his own testimony recollecting the number of hours of overtime he worked, "although the court need not accept every element of the plaintiff's case simply because the employer fails to produce records." *Leonard v. Carmichael Properties & Management Co., Inc.*, 614 F. Supp. 1182, 1186 (S.D. Fla. 1985) (citing *Marshall v. Hope Garcia Lancarte*, 632 F.2d 1196, 1197-98 (5th Cir. 1980)). Through Plaintiffs Bozeman and Ferguson's testimony at trial, the admissions of Olin and Defendant Alonso that Plaintiffs Bozeman and Ferguson had performed some "legitimate" hours of overtime work, and by reference to the Gevity payroll records' "bonuses," Plaintiffs Bozeman and Ferguson satisfied the requirement of showing that they worked overtime hours in general. Plaintiffs Bozeman and Ferguson further provided testimony regarding the number of overtime hours they worked, thereby meeting their burdens to provide evidence of the approximate number of overtime hours worked. Plaintiff Woods similarly demonstrated that he worked overtime hours through his testimony, as well as providing evidence in the form of his testimony of the approximate number of overtime hours he completed.

Consequently, the burden then shifted to Port-O-Tech to provide either evidence of the "precise amount of work performed" or "evidence to negat[e] the reasonableness of the inference to be drawn" from Plaintiffs' evidence. Defendants did not even attempt to quantify the "precise amount of work performed" by Plaintiffs. Instead, Defendants sought to demonstrate that Plaintiffs' testimony regarding the number of overtime hours they worked was simply not reasonable. Based on the Findings of Fact, *supra*, the Court concludes that Defendants overcame their burden in this regard to a certain extent. As explained in the Findings of Fact, while the evidence negates Plaintiffs

-30-

Ferguson's and Bozeman's claims of having worked the number of overtime hours determined by dividing the bonuses by $12.00 per hour, it supports the reasonable inference that during the relevant time period, Plaintiff Bozeman worked a total of 2,007.66 hours of overtime, Plaintiff Ferguson worked a total of 1,247.5 hours of overtime, and Plaintiff Woods worked a total of 57 hours of overtime.  Because Plaintiffs were not paid time and one-half for some of these hours, they are entitled to backpay for those hours in the amounts indicated in the Findings of Fact.[12]

## C.  Willfulness

The FLSA's statute of limitations provision provides, in relevant part, "[An action] may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. §255(a).  The employee bears the burden of demonstrating that the employer committed a willful violation of the FLSA, in order to enjoy the three-year statute of limitations.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  As the Supreme Court has explained, under the FLSA, conduct that is "willful" refers to "conduct that is not merely negligent.  The standard of willfulness . . . that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . is surely a fair reading of the plain language of the [FLSA]."  *Id.* at 133 (citing *Trans World Airlines, Inc. v.*

---

[12]To be clear, the Court is not offsetting hours allegedly worked by Plaintiffs for Coylin in arriving at this conclusion.  Rather, the Court's Findings of Fact and Conclusions of Law with respect to this issue pertain only to the issue of the reasonableness of the hours claimed.  As all parties agree that the bonuses paid to Plaintiffs Bozeman and Ferguson were, in fact, overtime pay, the only issue to be determined by the Court in this respect was whether the amount of overtime paid by Defendants equaled the number of overtime hours worked by Plaintiffs, multiplied by one and one-half times Plaintiffs' respective hourly rates.

*Thurston*, 469 U.S. 111 (1985)).  As for the meaning of "reckless disregard," the portion of the Code of Federal Regulations addressing, in part, the government's responsibilities under the FLSA defines that phrase as meaning "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]."  5 C.F.R. §551.104.  Willfulness under Section 255(a) constitutes a question of fact. *See* Notes to Pattern Jury Instruction 1.7.1, Eleventh Circuit Pattern Jury Instructions (Civil), 2005 ed. ("Employees must show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute in order to have the benefits of the three year statute of limitations. . . . This is a jury question.").

In the case before the Court, for the reasons described, *supra* at Section II.C., the Court finds that Defendants committed willful violations in failing to pay Plaintiffs time and one-half for all overtime hours worked for Defendants.  As a result, the applicable statute of limitations in this matter is three years.

### D.  Liquidated Damages

Title 29, United States Code, Section 260 provides, in relevant part,

> In any action commenced prior to or on or after May 14, 1947 to recover . . . unpaid overtime compensation, or liquidated damages, under the [FLSA], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

The Eleventh Circuit has observed that under this standard, "liquidated damages are mandatory absent a showing of good faith."  *Joiner v. City of Macon*, 814 F.2d 1537, 1538 (11th Cir. 1987) (citing *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir.), *cert. denied,* 474 U.S.

902 (1985)).  Moreover, the employer must demonstrate that its violation was "'both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict.'" *Id.* (quoting *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1352-53 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981), *impliedly overruled on other grounds as recognized in Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 n.4 (5th Cir. 1999)) (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979)).

Here, Defendants have asserted no affirmative defenses.  Moreover, even if they had, for the reasons discussed at Section III.C, *supra*, Defendants have failed to make the showing necessary to enable the Court to consider awarding anything less than liquidated damages.  Consequently, Plaintiffs are entitled to liquidated damages.  Section 216(b) provides that an employer who violates the overtime compensation provisions of the FLSA shall be liable to the employee in the amount of the employee's unpaid overtime compensation "and in an additional equal amount as liquidated damages."  29 U.S.C. §216(b).  Accordingly, Defendants are liable to Plaintiff Bozeman for $1,409.88 in liquidated damages, to Plaintiff Ferguson for $1,652.00 in liquidated damages, and to Plaintiff Woods for $885.94 in liquidated damages.

## ATTORNEY'S FEES

Under 29 U.S.C. §216(b), the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  Thus, where, as here, an FLSA plaintiff prevails, the Court must award reasonable attorney's fees and costs.  *See Kreager v. Solomon & Flanagan, P.A.,* 775 F.2d 1541, 1542 (11th Cir. 1985).

### *IV.  FINAL CONCLUSIONS*

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Plaintiffs Chester Bozeman, Kenneth Ferguson, and Byran Woods are entitled to judgment in their favor and against Defendants Port-O-Tech Corp., Manuel Alonso, and William Peeler;

2.  Plaintiff Bozeman is entitled to overtime damages in the amount of $1,409.88, plus an equal amount in liquidated damages, amounting to a total damages award of **$2,819.76**;

3.  Plaintiff Ferguson is entitled to overtime damages in the amount of $1,652.00, plus an equal amount in liquidated damages, amounting to a total damages award of **$3,304.00**;

4.  Plaintiff Woods is entitled to overtime damages in the amount of $885.94, plus an equal amount in liquidated damages, amounting to a total damages award of **$1,771.88**;

5.  Plaintiffs, as the prevailing parties, are entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).  The Court retains jurisdiction over attorney's fees and costs associated with the instant case, for which Plaintiffs may file a separate motion in accordance with Local Rule 7.3, S.D. Fla.

6.  Final Judgment will be entered by separate order, in accordance with Rule 58, Fed. R. Civ. P.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 19th day of September, 2008.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:      Counsel of Record

-34-